Jennifer Jonak of Jonak Pew v. Appellant John Rezner Rezner argues that HVB's defrauding of the U.S. through cards caused his injury. Is he still alleging that? I'm sorry. I'm sorry. Could you repeat that, Your Honor? Rezner argues that HVB's defrauding of the U.S. through cards facility caused his injury. And that is where we have tried to clarify that in the amended complaint that we filed, Your Honor. What we have put in that amended complaint is that HVB's fraud against Rezner caused his injury. And, indeed, that's the only thing that makes sense, because HVB doesn't make money from the government. HVB only makes money from people like Mr. Rezner. And there are a number of cases from circuits around the country that talk about the fact that even if there are multiple victims, even if there's a primary victim and a secondary victim, you can have multiple victims under RICO. Indeed, if you look at the face of the statute, it contemplates that. There are different provisions for private rights of action and the consequences of a criminal conviction. So your amendment is a RICO amendment? Yes, we did amend the RICO. Do you want to talk about the parole evidence rule issue? Yes, Your Honor. First of all, we believe that the district court erred because the parole evidence rule on which it relied has been overturned. River Island, the Supreme ‑‑ California Supreme Court unanimously held that it's no ‑‑ that that principle is no longer good law. In this case ‑‑ And the reason why it might be relevant in this case is because the case was still pending. Typically, retroactivity is not inferred, right? Yes, Your Honor. It ‑‑ the case law has been overturned. But in addition, even without River Island, we believe the district court erred. And the reason we believe it is because if you look at the district court's logic, it points to Sussex, for example, an unpublished decision from this panel. In Sussex, the sole issue is whether there was an oral promise at variance with a term in the contract. Here, our case is much broader than that. We're not saying that every single thing was legitimate, just this one oral promise that contradicted a provision in the agreement. We are saying that the integrated documents themselves contain affirmative misrepresentations and material omissions, such as commercial bribery, such as the Sibley opinion, such as the clear intent to cast this as a long-term loan that is legal and lawful. There are a number of California cases that make it clear that that satisfies the fraudulent prong. In addition, we believe that it is very clear from HVB's admissions in this case and the undisputed evidence that we have put in that HVB, what HVB did was unfair and, therefore, what it did was unlawful. I'd like to reserve the rest of my time for rebuttal, Your Honor. Roberts. You may do so, counsel. We'll hear from the bank. May it please the Court, Mark Ressler on behalf of HVB. Your Honors, if I could start with respect to the RICO issue and borrow from the great legal sage Yogi Berra. This is truly deja vu all over again. We were in this courtroom four years ago in Resner 1 when this Court emphatically ruled as a matter of law that there was no RICO standing by this appellant because there was no proximate cause. That was this Court's mandate. I didn't say standing. You just said there was no proximate cause. Well, it did say that Mr. Resner lacked standing, had not met the standing requirements and the proximate cause requirements because it was the United States who was the most immediate, the most direct victim of this scheme. Right. And that was not an issue you raised in a prior appeal. I've just read your brief. But that was the Court's ruling. I know it was. I'm just saying you didn't raise that, so it's not quite deja vu all over again. That was the issue on the cert petition that they filed, though, right? The issue on the cert petition, Your Honor, is that in the cert petition, Resner maintained, as he's maintained at every level throughout this litigation, that this was a fraud by HBB on the United States. So this really is the same old, same old. This appellant has always pursued in six years of litigation the notion that the fraud on Resner and the fraud on the U.S. is part of a unified RICO scheme. There's nothing new. And, in fact ---- Right. But so after Resner won, let's ---- I mean, I just want to get down to what we're talking about here. After Resner won, it's obvious that they can't ---- Resner cannot rely on the harm to the United States to establish proximate cause. So now they come back and they say, listen, we're amending, we're taking the United States out of it, and we are alleging direct harm now. Now, what's prohibited about that in Resner won? Because that's exactly what Resner did in Resner won that the Court rejected. That was the Court's mandate. All of the arguments that this was a scheme to defraud me were before this Court. They were before the district court. They were in the proposed jury instructions. They were before this Court on appeal. They were before the Ninth Circuit in connection with Resner's unsuccessful petition for re-hearing on Bonk. And they were before the Supreme Court. Right. But I understand what Resner was alleging then. But here ---- I mean, in fact, it says Resner alleges that the harm to the United States is sufficient proximate cause. And the Resner won said no. So now on remand, they say, well, we want to change our theory. What's wrong with that? Your Honor, first of all, they didn't change their theory. It was always the same theory. But if in addition, if we assume that they did change their theory, res judicata and waiver absolutely bar this do-over, this repackaging of claims. Again, years and years of litigation. Again, it's ---- I guess I don't understand your res judicata claim. You can't have res judicata in the same case. Your Honor, Resner, assuming that he pursued a different theory below, that he was trying to piggyback on HPB's fraud against the United States, he comes up to the Ninth Circuit and the Ninth Circuit states, no, you're not the most immediate, you're not the most direct victim. And the Ninth Circuit reverses, reverses, doesn't vacate, vacates with respect to UCL, but reverses the decision of the district court. Sends it back down to the district court. And his Honor in the district court did what he was required to do. He dismissed the RICO claim because of the Ninth Circuit's mandate finding that in this particular fraud scheme, there was only one victim. And that's ---- I don't see how you can read a mandate into the reversal of the grant of summary judgment. Typically, all that means is that you have to go to trial. But, Your Honor, the Ninth Circuit's opinion in Resner 1 was a finding as a matter of law that this plaintiff cannot bring a RICO claim because the United States, not this plaintiff, was the most direct victim. That doesn't mean, contrary to my colleague's suggestion, that there can never be multiple victims in a RICO case. All it means is that with respect to this very unique set of facts, where taxpayers eagerly sought out tax shelters to defraud the U.S. of tax revenue, in this particular unique situation, the Ninth Circuit held that only the United States was the most immediate and most direct victim. And that means, yes, there's no RICO-based relief for taxpayers, including Mr. Resner, in this situation. Well, the law and the district – okay. Starting the district court of Resner 1, the district court said there's no more direct victim than the plaintiff. There's no individual or entity that's better situated than plaintiff. And that's the decision that was reversed on appeal, right? The decision that was reversed on appeal was, yes. This statement that there was no better direct person other than Mr. Resner. The trial court granted summary judgment to Mr. Resner as a RICO plaintiff, and this court reversed that. And before the court – Now, let me follow up. That was the district court order. It gets reversed. It goes back down. And the argument they made below was there's no more direct victim than himself. Is there a different argument that they've made by amendment now? No. And, Your Honor, this is what's so critical. In Resner's brief in Resner 1, he said there can scarcely be a more direct victim of HPB's fraud on the U.S. than me. This is exactly what was before the court four years ago in Resner 1. This is exactly what he said in his cert petition to the U.S. Supreme Court. That's exactly what he said when he saw a rehearing on Bonk. He said over and over, I'm the most direct victim. And this circuit rejected that. Right. Except that, you know, the problem with Resner 1 in the briefing is that this was not an issue presented to the court directly. The court raised it on its own, which we can. And then there was a response. It's hard to fault parties for what they briefed or didn't brief when the court is raising an issue. And, I mean, the way I read it, it just said you can't rely on Harmony of the United States to show proximate conduct. Well, Your Honor, I would submit that it was more than that. It was that this plaintiff and similarly situated taxpayers do not have standing under RICO. And, in fact, the handiwork of the plaintiff and the      That's a great statement from that Plaintiff's firm on the United States to cheat the U.S. out of the tax dollars. And Hemi, we would submit, addresses this very issue. Hemi says that plaintiffs can't do what Mr. Resner is trying to do here, namely, they can't plead their way around RICO standing requirements to circumvent proximate cause requirements. That's one of the things that Hemi says, and we would submit that's exactly what Mr. Resner is trying to do. Yes, the Ninth Circuit did bring up the standing issue four years ago, but that was the court's ruling. And under the law of mandate or law of the case, we would submit, his honor at the trial court did exactly what he needed to do. Counsel, I assume you're referring then to this passage. It looks like it's on page 873. There is no dispute that HVB defrauded the United States through cards. We hold, however, that HVB's fraudulent activity toward the United States did not cause Resner's injury. Is that the crux of your argument? Yes, it is. It is, Your Honor.  of that same passage. And what's so notable here is HVB pleaded guilty pursuant to a deferred prosecution agreement and paid $29 million in restitution fees to the U.S. government. The U.S. Attorney's Office in the Southern District investigated and made HVB plead guilty. But no restitution was forthcoming to people like Mr. Resner and the taxpayers who so eagerly sought these tax scams. The only restitution that the DOJ paid was to the most immediate, the most direct victim of the scheme in this circuit's view, namely the U.S. Treasury, because Let me just stop. I hear his argument. What about me? I paid all these fees, right? How could I not be a direct victim? But you're saying that you can't get that under RICO. That's exactly right, Your Honor. And that's what this Court decided, that for this unique RICO situation, this unique set of facts, RICO is not appropriate. There can't be RICO-based relief, because some schemes have immediate and direct victims. And here, when you're talking about taxpayers who were paying 147 percent rates of interest and $4 million of upfront fees to secure a $7 million loan, it's such an irrational investment decision, this Court held the immediate direct victim is the United States, because this was first and foremost a scheme intended to defraud the United States out of tax dollars. And that's why no taxpayer anywhere received restitution with respect to any of these tax shelters. The restitution went to the U.S. Treasury. Right. But what the DOJ decided to do has nothing to do with civil suit. You'd agree with that? I mean, it's not binding on anybody. I take your point. I do. I do agree. I do agree with that, Your Honor. But I do believe that that was part of the – part of this Court's analysis in finding that Reznor lacks RICO standing and that RICO relief is not available in this kind of a situation. Where do you find that? I think that's what drove the Ninth Circuit to say this was a scheme intended to deprive the United States out of tax revenue. This wasn't a scheme to defraud Reznor out of fees. Well, that's not part of the opinion. That's just your speculation. Well, Your Honor, the – this Court said we hold that HPB's fraudulent activity toward the United States did not cause Reznor's injury. I think that can only be taken to mean that Reznor is not the victim here. The victim was the United States. Now, it might be different for a fraud claim, and Reznor and HPB settled his fraud claim, but RICO has unique pleading, standing, and proximate cause requirements. We know that from Hamme and from Anza. There was no cross-motion for summary judgment in this case. That's correct, Your Honor. There was not. Prior counsel did not bring a cross-motion for summary judgment. If I can – and I would also note, Your Honors, that with respect – with respect to the merits of the RICO situation, Mr. Reznor uses the same evidence that was rejected four years ago. For example, HPB's admissions in the deferred prosecution agreement. Yes, HPB admitted it engaged in wire fraud. It did. And it admitted it engaged in mail fraud. It did. But those admissions said we did that to defraud the United States. So those were admissions of mail and wire fraud against the direct victim, the U.S. Treasury, not against Mr. Reznor. If I can – Might we turn to that parole evidence rule? I don't mean to interrupt, but you're running out of time. River Island seems to have changed things. What's your response? My response is that River Island speaks to parole evidence, but the import of the Sussex opinion is reasonable reliance. This Court held in Sussex that no party entering into these kinds of tax transactions can rely on a representation that this is a long-term loan. Reznor now says, well, that was only one, a narrow sliver in this constellation of many misrepresentations. But the key is the duration of the loan is central to the entire card scheme, because it only makes economic sense. It's only a transaction with economic substance if it's a 30-year loan. As soon as it ceases to be a 30-year loan and indeed can become a one-year loan, then you find yourselves in a situation that Reznor is in, paying $4 million in upfront fees for a $7 million loan that was fully collateralized, by the way, to the tune of 147 percent rate of interest, all to replace a loan that he had that was charging only 5 percent interest. In other words, once the long-term duration of the loan collapses, CARDS is necessarily a sham transaction designed solely to defraud the United States. And Sussex effectively stands for the proposition that Mr. Reznor knew that, that any person entering this agreement knew that because there was a provision plain as day that Mr. Reznor has admitted to reading in which HPB said we can terminate this loan on the first-year anniversary or any year thereafter. That's why Mr. Reznor found himself paying an outlandish 147 percent rate of interest which he knew was ridiculous. No rational person would do that. And what's key in Sussex as well, this Court said it's particularly unreasonable for a person to rely when they're sophisticated and experienced. Mr. Reznor created and founded the company that ultimately became Facebook. And this entire transaction was driven by his desire to sell Yahoo Stock. He received $100 million worth of Yahoo Stock for the sale of his company, and he sold $30 million worth of that stock and tried to pay zero in taxes by entering into CARDS with his eyes wide open. HPB's admissions all relate to wire fraud and mail fraud with respect to the U.S. Government, not with respect to Mr. Reznor. Also, Mr. Reznor knowingly assumed joint and several liability for a $47 million loan that was created on behalf of a shell company solely for the purpose of this transaction, whose two members were a British housewife and a British accountant, neither of whom Mr. Reznor knew or had never met. And that's because this was all part of the scam that he went into knowingly to pay zero taxes on a $30 million transaction. Thank you, counsel. Your time has expired. Ms. Jonach, you have some reserve time. Yes, Your Honor. First, I'd like to respond to some of the points my opposing counsel made. The first is the issue of direct injury. As Judge Thomas has noted, this issue was not only not briefed. In Reznor 1. Yes, Your Honor. This issue was explicitly waived by HPB in its reply brief. It was, therefore, not put before the court. Waived in the reply brief before the court in Reznor 1. Is that what you're saying? Correct. In addition, what I would say to that. What did they say in that? I'm sorry? What did they say in the reply brief? They actually have a section that talks about how they're not disputing the issue of direct injury. It was explicitly waived. Right. Well, that didn't matter to the court. No. But, Your Honor, I would posit that given what was before the court, where it has to draw all inferences in HPB's favor, HPB characterized this as they're trying to use our admissions of fraud against the government to claim, you know, to claim that we've defrauded them. So if you look at the language of the prior court's decision, it all says towards the United States, fraud on the United States. Nowhere does it say HPB's illegal conduct cannot proximately cause Reznor's injury. And that makes sense, because that would go against every other case out there. In Henne, the reason why that plaintiff wasn't directly injured is because the injury, the economic harm, was contingent on the actions of third or fourth parties. We don't have that here. Whether Reznor took a tax deduction or not, he's paid $4 million in fees. There is no case that finds that this is not a direct injury. And it also would make no sense in the RICO language that contemplates having multiple victims. Therefore, we contend that the prior panel did not mean this, and even if it's construed to mean that, they simply got it wrong. Well, if they got it wrong, there's nothing we can do about that. That's not true, Your Honor. Under Jeffries v. Wood, law of the case is something that's discretionary. Rule of mandate does not, is not binding on this panel. They got it wrong as a matter of law. If there's, to avoid a manifest injustice under Jeffries v. Wood. Well, Jeffries actually, yeah, went the other way. That's a different situation, yeah. Your Honor, I would also like to address a few other points that my opposing counsel made. He talked about why didn't Reznor try to claim restitution. If you look at 28 CFR 9.8b, actually, a plaintiff like Mr. Reznor is required to pursue a private right of action first. So that is exactly what we're doing. Secondly, RICO contemplates different sets of damages for criminal and civil conduct. It's, it apportions the pie differently, which shows that it's not supposed to be part of the same pie. My opposing counsel has talked about what drove the Ninth Circuit. But that is a, speculating as to the motives of what drove the first panel is not law of the case or rule of mandate. Lastly. Counsel, should we read into anything, into the Reznor 1 context that there was no motion for summary judgment filed on your side? In Reznor 1? We believe that that's, that's critical, the fact that we had moved for summary judgment and we were moving on the hearing. No, there were not, there weren't conflicting motions for summary judgment is my point. No, Your Honor, because if you look at the history, they actually brought, I don't remember how many, but numerous motions to dismiss by that point. Lastly, I would like to talk about Mr. Reznor's reasonable reliance. That was the entire thing that was briefed. And that ruling by the court, the district court, actually was not addressed or disturbed by the prior panel's ruling in Reznor 1. The reality is that it was reasonable for Mr. Reznor to rely. First of all, he doesn't have to establish reliance under Bridge and under the various UCL cases where there is unlawful conduct. Mr. Ressler says that all of the requests for admission just have to do with the DPA, but they don't. I actually went back and looked at the RFA admissions, which are binding, and those are the ones that have to do with the DPA. And I think that's what Mr. Reznor was trying to talk about. Admit that you transmitted or delivered funds belonging to Reznor to Sidley in connection with Reznor's cards facility. Admit. Admit that you knew at the time you received proceeds in connection with Reznor's cards facilities that those funds were derived from unlawful conduct. Admit. And that time period is before he even files a tax return. But I just understand he's – there's no continuing fraud case, correct? That's out of the case at this point? That's correct, Your Honor. We have the UCL and the RICO that we need. That's correct, Your Honor. We were trying to make things simple by means of a stipulated judgment to put this on appeal last time because we were told the only issue was that of reasonable reliance. I'd like to make one last point, which is that if you look at the UCC, which is codified in New York 1-208 and California Commercial Code 1309, there's actually a UCC provision that requires a lender to act in good faith if there's a termination clause. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown